ELMER M. NOVAK, Petitioner and Counterrespondent, v. RONALD SMITH, Respondent and Counterpetitioner-Appellant (Dave Dobill, Franklin County Clerk, Respondent-Appellee; Edward A. Bundy *et al.*, Respondents).—RONALD SMITH, Plaintiff and Counterdefendant-Appellant, v. ELMER NOVAK, Defendant and Counterplaintiff-Appellee (Edward A. Bundy *et al.*, Plaintiffs).

Fifth District No. 5—88—0692

Opinion filed April 19, 1990.

Edwina Warner, of Troutt, Alexander, Quindry, Popit & Warner, of Benton, for appellant.

Eric L. Terlizzi, of Pfaff, Garner & Terlizzi, of Salem, for appellee Elmer Novak.

JUSTICE CHAPMAN delivered the opinion of the court:

The subject of this appeal concerns the ownership of the coal underlying the following described tract:

"The Southeast Quarter (SE 1/4) of the Southeast Quarter (SE 1/4) of Section 28, Township 7 South, Range 4 East of the Third Principal Meridian, in Franklin County, Illinois."

In October of 1956, Elmer Novak received a certificate of purchase for the mineral estate underlying the property. In circuit court cause No. 979, Novak petitioned for an order directing the issuance of a tax deed to the mineral estate. On October 5, 1959, the circuit court entered an order directing the county clerk "to issue and deliver to said Petitioner a Tax Deed for the premises described in said petition." On October 5, 1959, the county clerk executed a tax deed to Novak, conveying the *oil and gas mineral estate* underlying said premises. Since that time Elmer Novak has paid annual taxes on the mineral estate.

Ronald Smith acquired title to the property described by the legal description above, by virtue of two deeds: one dated 1978, the other 1982. Included in the abstract of the property purchased by Ronald

Smith were copies of the following documents from cause No. 979: certificate of purchase, public notice, petition for order directing issuance of tax deed, notice of extension of redemption date, affidavit of county clerk and order directing issuance of tax deed. Smith testified that he had the abstract reviewed by an attorney prior to making his purchase of the acreage. He testified that his attorney prepared the deeds to the property, but Smith did not recall if they discussed whether the tax deed conveyed only oil and gas and excluded coal. Smith testified that he reviewed the abstract himself and was aware he was not purchasing the oil and gas underlying the estate.

In 1983, the Cave Coal Association approached Smith with an offer to purchase the coal underlying the property. The Cave Coal Association, however, informed Smith that there was a question as to the ownership of the coal by virtue of Novak's tax deed. Ronald Smith, Edward and Margaret Bundy, Helen Ross and Marie Wides filed a two-count complaint in the circuit court, cause No. 84—CH—84, to quiet title in the property and all minerals underlying the premises. Edward and Margaret Bundy, Helen Ross and Marie Wides entered into a settlement of their claim against Novak and as such their claim was not submitted to the trial court and is not a subject of this appeal. Elmer Novak filed a counterclaim seeking to quiet title to the coal underlying the property, and also seeking to reform his tax deed to read *oil, gas and other mineral estate*, wherever the words "oil and gas mineral estate" appear. Novak also filed a third-party complaint against Dave Dobill, the current county clerk, seeking reformation of the tax deed. Edward and Margaret Bundy, Helen Ross and Marie Wides were named as necessary third-party defendants.

A bench trial was conducted in cause No. 84—CH—84, whereupon the court entered a judgment denying both parties' complaints for quiet title. The court's order included a finding that as now described, the tax deed's reference to the oil and gas mineral estate does not include coal. The court ordered that cause No. 979 be reopened for the parties to present additional evidence on the issue of whether Novak's tax deed should be reformed. In light of the court's order reopening cause No. 979, an agreed order was thereupon entered by the circuit court consolidating cause No. 84—CH—84 with cause No. 979.

Elmer Novak then filed a separate petition to reopen proceedings and to reform his tax deed. Ronald Smith filed a counterpetition asking the court to deny Novak's request for a corrected tax deed or, in the alternative, to set aside Novak's tax deed for lack of subject-matter jurisdiction. A hearing was conducted March 3, 1988, with both parties presenting evidence on the petitions. On July 7, 1988, the

court entered a judgment denying Novak's petition to reform his tax deed and denying Smith's petition to set aside the deed. Both parties filed post-trial motions asking the court to reconsider its decision. The court entered a modification of judgment on October 13, 1988, granting the petition of Elmer Novak to reopen the proceedings in cause No. 979 and ordering the county clerk to issue a corrected tax deed in conformance with the trial court's order in cause No. 979, entered October 5, 1959.

Ronald Smith brings this appeal, presenting two issues for our review: (1) whether the trial court erred in not finding that the tax deed should be set aside for lack of subject-matter jurisdiction; and (2) whether Elmer Novak is entitled to reformation of the tax deed.

In the instant case, Smith's premise for arguing that the trial court lacked jurisdiction in issuing the tax deed to Novak is based on the fact that there is no record of any severance of the minerals in the chain of title prior to the issuance of the tax deed in 1959. The parties stipulate that the original court file in cause No. 979 is lost and the file was reconstructed to the best of their ability. The reconstructed portion of the file consists of copies of the following: tax sale certificate of purchase, certificate of publication, petition for order directing issuance of a tax deed, affidavit of county clerk, notice of extension of redemption date, and order directing the issuance of tax deed. The certificate of purchase and notice of extension of redemption date in the original tax sale proceeding show that the minerals were taxed in the name of Hall. Smith contends that the evidence shows there was never anyone named Hall in the chain of title to the property. Smith argues that the evidence is conclusive that the mineral estate was never severed from the fee, the minerals were, therefore, exempt from taxation, and the order entered for issuance of tax deed is void for lack of jurisdiction. Smith also contends that the failure to personally serve notice on the owner of the mineral estate is further proof that no severance of the mineral estate had in fact occurred.

■■■ The entire tax sale proceeding is one *in rem* rather than *in personam*. It is the jurisdiction over the land itself, acquired in the original application for judgment and order of sale that gives to the county court the power to act. (*Urban v. Lois, Inc.* (1963), 29 Ill. 2d 542, 546, 194 N.E.2d 294, 296.) Once a tax deed has been issued, an authoritative determination has been made as to the purchaser's right to the property. (*In re Application of County Collector* (1988), 169 Ill. App. 3d 180, 184, 523 N.E.2d 617, 619.) However, in order for the trial court to invoke its special statutory jurisdiction granted it in the

Revenue Act of 1939 (see *La Salle National Bank v. Hoffman* (1971), 1 Ill. App. 3d 470, 274 N.E.2d 640), the taxes on the subject property must be delinquent. (Ill. Rev. Stat. 1987, ch. 120, par. 751; *Stein v. Olsen* (1975), 26 Ill. App. 3d 858, 862, 326 N.E.2d 176, 178.) Where the allegedly delinquent taxes were paid, or where the property was exempt from taxation, the court lacks jurisdiction over the property, and a judgment and order of sale against that property is void. *In re Application of County Collector v. Olsen* (1977), 48 Ill. App. 3d 572, 584, 362 N.E.2d 1335, 1344.

■ While we note that the determination of whether a party has been given the notice required in a tax sale proceeding goes to whether the court should order the tax deed to issue and not to whether the court has jurisdiction in the proceedings (*Smith v. D.R.G., Inc.* (1976), 63 Ill. 2d 31, 35-36, 344 N.E.2d 468, 470), we will address the question of the alleged failure to serve personal notice on the owners of the mineral estate, since, as Smith contends, absence of personal notice may suggest an inference that no severance of the mineral estate had occurred.

In the case at bar, Novak testified that after he had purchased the taxes on the mineral estate he contacted his attorney, Mr. Merritt. He instructed Mr. Merritt "to take the necessary legal action to develop a tax deed *** doing whatever was necessary to then submit to the county clerk the information, so that I could get a tax deed." Novak testified that from that point on he personally did not partake in the actual searches, publications or preparation of documents. The parties stipulate that Mr. Merritt is deceased and that his original files are not available, as they were destroyed some time ago. The parties further stipulate that Lemuel Hiller, the county clerk who issued the tax deed to Novak, is also deceased. Although the only party available to testify who was privy to the original tax sale proceeding is Novak, the reconstructed court file of the tax sale proceeding shows a notice of publication evidencing compliance with the statute. The court's order directing issuance of a tax deed further evidences compliance:

> "All notices required by law have been given; And in particular all notices provided by Sections 264 and 266 of the Revenue Act of 1939 as amended have been given in the manner and form within the time therein provided ***."

■■ A court should not direct the county clerk to issue a tax deed until it is satisfied that the requirements of the Revenue Act have been met. (Ill. Rev. Stat. 1987, ch. 120, pars. 744, 747; *Smith v. D.R.G., Inc.* (1976), 63 Ill. 2d 31, 36, 344 N.E.2d 468, 470.) Prior to issuance of a tax deed, the court makes a judicial determination

whether the notice and other requirements have been met. When a finding of compliance has been entered, it will thereafter be presumed that satisfactory proof of this fact was presented to the court even though such evidence is not preserved in the record. (*People v. O'Keefe* (1960), 18 Ill. 2d 386, 393, 164 N.E.2d 5, 9.) We are satisfied that proper notice was given in the tax sale proceeding. We, therefore, do not consider the alleged failure to personally serve the owners of the mineral estate with notice to be significant in determining whether or not the mineral estate had in fact been severed.

We now turn to the argument that the court lacked jurisdiction over the property since there is no record of any severance of the mineral estate in the chain of title. Bob Fuson, an abstractor of land titles, testified that based on his examination of the abstract, no severance of the mineral estate had ever been executed, and he could not find that anyone with the name Hall had ever owned of record any interest in any of the minerals underlying the property. The name Hall did appear on the certificate of tax sale and the notice of extension of redemption date. The certificate of tax sale has written therein, "10 year sale No. 24," evidencing that the mineral estate was separately assessed for at least 10 years up until the tax sale proceedings. Yet Ronald Smith suggests that the inability to locate a recorded conveyance of the mineral estate proves that it was not in fact severed and thus not legally subject to separate taxation. Smith fails to recognize that even though a deed is not recorded, if a deed is delivered to the grantee and remains in his possession and control, the legal effect of the transaction is to place the title in the grantee. (*Ross v. Ross* (1950), 406 Ill. 598, 601, 94 N.E.2d 885, 886-87.) The absence of a recorded deed must be ascribed to reasons other than lack of a severance of the mineral estate. Without further evidence of a jurisdictional defect, we are not prepared to second-guess the trial court which entered its order in 1959 finding that it had jurisdiction over the property and ordering the issuance of the tax deed. We affirm the trial court's finding that the tax deed should not be set aside for lack of subject-matter jurisdiction.

The second issue on appeal concerns whether the trial court erred in finding that Elmer Novak is entitled to reformation of his tax deed. To reform an instrument upon the ground of mistake, the mistake must be one of fact, mutual and common to both parties, and in existence at the time of the execution of the instrument, showing that at such time the parties intended to say a certain thing and, by mistake, expressed another. (*Schmitt v. Heinz* (1955), 5 Ill. 2d 372, 379, 125 N.E.2d 457, 460.) Before a written instrument will be re-

formed, the party seeking reformation must prove by clear and convincing evidence that the instrument as it now stands does not properly reflect the true intention of the parties, and that there has been either a mutual mistake or mistake by one party and fraud by the other. (*Parrish v. City of Carbondale* (1978), 61 Ill. App. 3d 500, 505, 378 N.E.2d 243, 247.) The question whether plaintiff has presented sufficient evidence to meet his burden of proof and overcome the presumption that the instrument as written expresses the parties' true intention is primarily a question of fact, and we will not disturb the trial court's decision unless it is against the manifest weight of the evidence. *Parrish*, 61 Ill. App. 3d at 506, 378 N.E.2d at 247.

The trial court found, in its judgment entered March 12, 1987, in cause No. 84—CH—84, that: (1) Ronald Smith was not a subsequent innocent purchaser without notice or knowledge as ought to put a prudent man on inquiry as to the title; (2) *laches* does not apply to Elmer Novak; and (3) a mutual mistake was made between the county clerk Lemuel Hiller and Elmer Novak when the tax deed was issued. The trial court ultimately determined that Novak was entitled to reformation of the tax deed to conform the description of the conveyance in the tax deed with the order for the issuance of the tax deed, which provided that Novak was to receive the premises described in his petition, the mineral estate.

Smith contends that the finding of the trial court in this case is erroneous because he is a *bona fide* purchaser for value and reformation of the deed is barred by *laches*. We disagree. It is true that equity will not reform a deed against subsequent *bona fide* purchasers for value, without notice of the mistake or of facts which should put them on inquiry. (*Pulley v. Luttrell* (1958), 13 Ill. 2d 355, 358, 148 N.E.2d 731, 733.) However, the evidence in the instant case disclosed that while the record of the original tax deed proceeding, cause No. 979, cannot be located, Smith's abstract of the property did include copies of the certificate of purchase, publication notice, petition for order directing issuance of a tax deed, notice of extension of redemption date, affidavit of county clerk and order directing the issuance of a tax deed. All of these documents refer to the conveyance to Elmer Novak as the mineral estate of said described premises. Although Smith personally reviewed the abstract and had the abstract examined by an attorney prior to making his purchase of the premises, he did not obtain an opinion of title as to the conveyance to Novak. Furthermore, Smith's failure to inquire as to Novak's payments of the taxes on the mineral estate is without explanation. We find that the facts of this case are such as ought to have put a pru-

dent man on inquiry as to the title to the coal. (See *Schuline v. Pelzer* (1971), 2 Ill. App. 3d 791, 276 N.E.2d 832.) Based on the record the trial court did not err in finding that Ronald Smith was not a *bona fide* purchaser for value, without notice.

 █ Ronald Smith argues that notwithstanding the trial court's finding that he is not a *bona fide* purchaser for value, without notice, reformation of the tax deed should be denied because of *laches*. *Laches* is such neglect or omission to assert a right, taken in conjunction with a lapse of time of more or less duration and other circumstances causing prejudice to an adverse party, as will operate to bar relief in equity. (*Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 552, 147 N.E.2d 341, 344.) Courts of equity have considered the following factors to determine whether the doctrine of *laches* applies:

> (1) conduct by the defendant giving rise to the situation of which complaint is made and for which complainant seeks a remedy;
>
> (2) delay in asserting the complainant's rights;
>
> (3) lack of knowledge or notice on behalf of the defendant that the complainant would assert the right on which he bases his suit;
>
> (4) injury or prejudice to the defendant in the event relief is accorded to the complainant or the suit is held not to be barred.

See *Pyle v. Ferrell*, 12 Ill. 2d 547, 147 N.E.2d 341; *Beynon Building Corp. v. National Guardian Life Insurance Co.* (1983), 118 Ill. App. 3d 754, 455 N.E.2d 246; *Ballard v. Granby* (1980), 90 Ill. App. 3d 13, 412 N.E.2d 1067.

 █ Smith argues that Elmer Novak should have known of the alleged error in the tax deed in 1959 when the deed was executed. Smith notes with particular attention those cases which have held that because oil and mining property is of such a specially precarious nature and is exposed to utmost fluctuations in value, there is no class of property in which *laches* is more relentlessly enforced. (*Pyle*, 12 Ill. 2d at 553, 147 N.E.2d at 345; *Twin-Lick Oil Co. v. Marbury* (1875), 91 U.S. 587, 23 L. Ed. 2d 328.) While we recognize the holding of these cases, we also recognize that in our system of judicial sales it has long been the court's policy to protect the purchaser whenever possible. (See *Village of Dolton v. First National Bank* (1958), 12 Ill. 2d 435, 440, 147 N.E.2d 62, 65.) Every document in the reconstructed file of cause No. 979 refers to the estate conveyed to Novak as the mineral estate. Although the phrase *oil and gas mineral estate* in the tax deed may arguably have put Novak on notice that

the deed did not convey the coal rights, since 1959 Novak has annually received and has paid a tax bill on the mineral estate. It was not until 1984 that he was put on notice of an adverse claim to the coal, when he was contacted by the Cave Coal Association with regard to purchasing the coal. Based on the facts at bar, we see no reason to reverse the trial court's holding that *laches* is not a bar to reformation of the tax deed.

Affirmed.

RARICK and GOLDENHERSH, JJ., concur.